## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Minnesota Majority, Minnesota Voters Alliance, Minnesota Northstar Tea Party Patriots, Election Integrity Watch, Susan Jeffers, individually and as an election judge, Dorothy Fleming, Jeff Davis, Dan McGrath, Eugene F. Delaune II, and Randy Liebo,

                Plaintiffs,

vs.

Joe Mansky in his official capacity as the Elections Manager for Ramsey County, Rachel M. Smith in her official capacity as the Elections Manager for Hennepin County, Mike Freeman in his official capacity as Hennepin County Attorney, Susan Gaertner in her official capacity as Ramsey County Attorney, and Mark Richie in his official capacity as Secretary of State,

                Defendants.

Court File No. _____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

## INTRODUCTION

1.    This is an action for declaratory and injunctive relief against Hennepin County, Rachel M. Smith, Elections Manager for Hennepin County,  Ramsey County Elections Manager Joe Mansky, and Minnesota Secretary of State Mark Richie for the violation of the United States and Minnesota Constitutions' protection of free speech, association, and the right to vote of the individual Plaintiffs and Plaintiffs members or supporters of Minnesota Majority, Minnesota Voters Alliance, and the Minnesota

Northstar Tea Party Patriots — all 501(c)(4) member organizations.  Plaintiffs Minnesota Majority, Minnesota Voters Alliance, and the Minnesota Northstar Tea Party Patriots are also part of a grass roots coalition referred to as "Election Integrity Watch." The coalition designed, made and distributed a button to its members and supporters that states "Please I.D. Me."

2.      Plaintiff Susan Jeffers is a Ramsey County Election Judge who has been directed to exclude eligible voters from polling places for wearing the Election Integrity Watch non-campaign button "Please I.D. Me."  In addition, as an election judge, she has been directed to exclude eligible voters from polling places for wearing non-campaign shirts offered by the Plaintiff Northstar Tea Party Patriots.

3.      The policies of excluding poll watchers or eligible voters for wearing non-campaign buttons or shirts have been expressly made through the Ramsey County Election Manager Joe Mansky to Ramsey County election judges; through declarations by Mike Freeman, Hennepin County Attorney; and approved, upon information and belief, by Minnesota Secretary of State Mark Richie, the chief election officer for the State of Minnesota.

4.      The statutory interpretations made and policies promulgated by County and State officials are violative of the freedom of speech, the freedom of association, and the freedom to vote as protected under the article 1 § 3 of the Minnesota Constitution and the First Amendment of the United States Constitution. Furthermore, the state and county interpretations of the statute in question show the

facial unconstitutionality — and as applied — of Minn. Stat. § 211B.11 as not being narrowly tailored to meet a compelling state interest.

5.      Injunctive relief is necessary to allow eligible voters to peacefully exercise their right to vote within the polling place on election day while expressing their constitutionally protected right to free speech, and to direct election judges that they may not preclude eligible voters from the polling place for wearing non-campaign shirts or buttons, inclusive of poll watchers.

## JURISDICTION

6.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 (1)-(4) and 42 U.S.C. §§ 1983, 1985(2), (3) and § 1988 (civil rights statutes) and the First Amendment of the United States Constitution.

7.      This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, and has general legal and equitable powers.

8.      Venue is proper in this Court under 28 U.S.C. § 1391.  Plaintiffs further invokes the pendent jurisdiction of this Court to consider claims arising under state law.

## PARTIES

### Plaintiffs

9.      Plaintiff Minnesota Majority is a Minnesota 501(c)(4) nonprofit organization with members formed in the interest of transparency in government, protecting identified values as they interrelate with political issues, including

3

oversight, investigation, and reform concerning election and voter or voter registration irregularities.  It is an association of members.  Minnesota Majority does not endorse candidates seeking elected or appointed offices.

10.     Plaintiff Minnesota Voter Alliance is a Minnesota 501(c)(4) nonprofit organization with members formed with the primary purpose of empowering the electorate, with interests inclusive of the integrity of the election process.  It is a non-partisan, and is not affiliated with any political party or organization.  Minnesota Voters Alliance does not endorse candidates seeking elected or appointed offices.

11.     Plaintiff Northstar Tea Party Patriots is a Minnesota 501(c)(4) nonprofit member organization.  It is not a political party. It is a coalition of local associations in Minnesota with a mission to attract, educate, organize, and mobilize citizens to secure public policies consistent with values inclusive of fiscal responsibility, constitutionally limited government and free markets.  Northstar Tea Party Patriots does not endorse candidates seeking elected or appointed offices.

12.     Plaintiff Election Integrity Watch is the coalition of the Plaintiffs Minnesota Majority, Minnesota Voters Alliance, and the Minnesota Northstar Tea Party Patriots.

13.     Under Minn. Stat. § 200.02, a "political party" means an association of individuals under whose name a candidate files for partisan office.  Under this definition, Election Integrity Watch, Minnesota Majority, Minnesota Voters Alliance, and Minnesota Northstar Tea Party Patriots are not political parties.

14.     Plaintiff Susan Jeffers is an eligible and registered voter in Minnesota, residing at 1720 20th Avenue NW, New Brighton.  Ms. Jeffers is an election judge in Ramsey County, Minnesota.

15.     Plaintiff Jeff Davis is an eligible and register voter in Ramsey County, Minnesota.

16.     Plaintiff Dorothy Fleming is an eligible and registered voter in Hennepin County, Minnesota.

17.     Plaintiff Dan McGrath is an eligible and registered voter in Hennepin County, Minnesota.

18.     Plaintiff Eugene F. Delaune II is an eligible and registered voter in Ramsey County, Minnesota.

19.     Plaintiff Randy Liebo is an eligible and registered voter in Hennepin County, Minnesota.

**Defendants**

20.     Defendant Joe Mansky is the Elections Manager for Ramsey County, Minnesota.  Mr. Mansky is responsible for the conduct of elections in Ramsey County such as the enforcement of statutory prohibitions on electioneering, including but not limited to identifying eligible and ineligible voters, the conduct within polling places as it relates to campaign materials and the training and oversight of Ramsey County election judges.

21.     Defendant Rachel M. Smith is the Elections Manager for Hennepin County, Minnesota.  Ms. Smith is responsible for the conduct of elections in

Hennepin County such as the enforcement of statutory prohibitions on electioneering, including but not limited to identifying eligible and ineligible voters, the conduct within polling places as it relates to campaign materials and the training and oversight of Hennepin County election judges.

22.     Defendant Mike Freeman is the Hennepin County Attorney.  He is responsible for preserving the freedom of speech of citizens and for the enforcement of laws through his office within the County including petty misdemeanors.  Mr. Freeman individually and through his office is also responsible for the constitutional enforcement of statutory prohibitions on electioneering.

23.     Defendant Susan Gaertner is the Ramsey County Attorney.  She is responsible for preserving the freedom of speech of citizens and for the enforcement of laws through her office within the County including petty misdemeanors.  Ms. Gaertner individually and through her office is also responsible for the constitutional enforcement of statutory prohibitions on electioneering.

24.     Defendant Mark Richie is the Minnesota Secretary of State.  As Secretary of State, Mr. Richie is the statewide election officer responsible for the policies relating to the conduct of elections within the State.  Mr. Richie directly communicates with County Election Managers, or their equivalent officials, on election matters inclusive of the conduct within polling places as it relates to election judges or other poll workers.

25.     At all times relevant to the allegations of this Complaint, and in all actions described, the defendants acted under color of law and under the authority bestowed upon them as county or state officials.

### Constitutional and Statute Provisions at Issue

26.     The First Amendment of the United States Constitution states that "Congress shall make no law… abridging the freedom of speech, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

27.     Article 1 § 3 of the Minnesota Constitution states that "all persons may freely speak, write, and publish their sentiments on all subjects…."

28.     Minnesota Statute § 211B.11, subd. 1 states that:

> A person may not display campaign material, post signs, ask, solicit, or in any manner try to induce or persuade a voter within a polling place ….on primary or election day to vote for or refrain from voting for a candidate or a ballot question … A political badge, political button, or other political insignia may not be worn at or about the polling place on primary or election day
>
> * * *
> Subd. 4. … Violation of this section is a petty misdemeanor.

### FACTS

**Election Integrity Watch "Please I.D. Me" buttons are not political and are not associated with any Minnesota political campaign.**

29.     In preparation for the 2010 election, Plaintiffs Minnesota Majority, Minnesota Voters Alliance and the Minnesota Northstar Tea Party Patriots formed a coalition referred to as "Election Integrity Watch."

30.     Election Integrity Watch is not a political party under Minn. Stat. §

200.02 which states that a "political party" means an association of individuals under

whose name a candidate files for partisan office.

31.     Election Integrity Watch is a concerned grass roots effort to protect

election integrity.

32.     Poll watchers are allowed on election day.

33.     Election Integrity Watch has instructed individuals to act as poll

watchers outside polling places and within them only when voting or when otherwise

authorized to be in the polling place.

34.     Each individual has been instructed to observe the election process

only and not to interfere with any person's attempt to vote, or vote on this coming

election day, November 2, 2010.

35.     The Election Integrity Watch created a button that states "PLEASE

I.D. ME." (See Exhibit A).

36.     The Election Integrity Watch button also provides a telephone number

— "877.602.WATCH."

37.     The Election Integrity Watch button also provides a website

"ELECTIONINTEGRITYWATCH.COM."

38.     The Election Integrity Watch also has as a background for the

previously referenced wording and number, a design that appears as a human eye –

similar to that found on the back of the U.S. dollar bill.

39.    Election Integrity Watch has disseminated its button and instructed its separate organizational members and supporters to wear the "Please I.D. Me" button on the forthcoming election day, November 2, 2010, in their respective polling places.

40.    There is no ballot question for Minnesota voters to vote upon regarding voter identification or other voter identification issues.

41.    There is no political campaign related to voter identification.

**Minnesota Northstar Tea Party Patriots offered shirts and hats are not political endorsements of any candidate and are not associated with any Minnesota political campaign.**

42.    Plaintiff Minnesota Northstar Tea Party Patriots (Northstar Patriots) is not a political party under Minn. Stat. § 200.02 which states that a "political party" means an association of individuals under whose name a candidate files for partisan office.

43.    The Northstar Patriots does not endorse candidates for elected office.

44.    None of the associations associated with the Northstar Patriots endorse candidates for elected office.

45.    Plaintiff Northstar Patriots offers to the public shirts and hats that reflect the values of the organization inclusive of subjects such as fiscal responsibility, constitutionally limited government and free markets.

46.    The Northstar Patriots shirts offered have statements, phrases, or slogans such as "Don't tread on me," "Liberty," We'll Remember in November," "Fiscal Responsibility, Limited Government, Free Markets" or a drawing of a shield.

47.     Each shirt or hat includes the logo "Tea Party Patriots." (See Exhibit B).

48.     There is nothing in any particular shirt or that phrase or slogan that endorses, causes confusion, undue influence, or is in any other way related to a political campaign.

49.     Each slogan is reflective of the wearer's association with a particular group that does not endorse candidates or ballot questions.

**Minnesota Majority has done work regarding election integrity issues since prior to the 2008 election, but the Secretary of State, Hennepin County, and Ramsey County officials have opposed these efforts.**

50.     Plaintiff Minnesota Majority has engaged in scrutinizing election processes since prior to the 2008 election.

51.     Inclusive of its studies of election processes, Minnesota Majority has examined public records regarding specific issues such as non-eligible voters — non-citizens or non-eligible felons for instance — who may have voted during the election of 2008.

52.     In 2009 and most recently in 2010, the Secretary of State, Hennepin County, and Ramsey County officials have resisted attempts by Minnesota Majority to protest alleged improper procedures by the Secretary of State, or to obtain public records to examine and produce studies relating to for instance, non-citizens.

53.     The Secretary of State after the filing of the Minnesota Majority's Petition before the Minnesota Supreme in 2009 regarding inaccuracies relating to the Statewide Voter Registration System, admitted that more ballots were cast than voters

counted for in the thousands (*See, Minnesota Majority, et al.  v. Kitt Johnson, et al.*. Court No. A09-950).

54.     In 2010, the Secretary of State, Hennepin County, and Ramsey County officials fought Minnesota Majority's attempt to obtain and preserve certain State public records for purposes of study and research relating to non-citizen status and voter registration related issues. (*See, In re Minnesota Majority,* Court File No. 62-CV-10-8233).

55.      The Election Integrity Watch coalition is a natural outcome of the interests of all three independent organizations working in areas of election integrity processes.

**Ramsey County Election Manager, Joe Manksy, determined and has instructed that Election Integrity Watch "Please I.D. Me" buttons and "Tea Party" messages of any kind would not be allowed in polling places.**

56.     Plaintiff Sue Jeffers is a Ramsey County Election Judge.

57.     Ms. Jeffers contacted Joe Mansky, Ramsey County Election Director regarding certain rumors relating to Election Integrity Watch "Please I.D. Me" buttons and "Tea Party" shirts on October 19, 2010.

58.     Mr. Mansky stated to Ms. Jeffers that Election Integrity Watch "Please I.D. Me" buttons would be prohibited in Ramsey County polling places.

59.     Mr. Mansky stated to Ms. Jeffers that "Tea Party" messages of any kind — even if they did not support or oppose a candidate, or an issue on the ballot — worn by any person, would be prohibited in Ramsey County polling place.

60.     Ms. Jeffers was "shocked" at the prohibition Mr. Mansky promulgated regarding the "Please I.D. Me" buttons and "Tea Party" shirts.

61.     As an election judge, Ms. Jeffers will be responsible for enforcing the Ramsey County policy of prohibiting a person in the polling place that is wearing either a "Please I.D. Me" button or a "Tea Party" shirt.

62.     As an election judge, Ms. Jeffers disagrees with Mr. Mansky's policy decision of prohibiting people who are wearing "Please I.D. Me" buttons or "Tea Party" shirts from the polling place as contrary to voting rights, free speech and association principles.

**Hennepin County polling workers will prohibit the wearing of "Please I.D. Me" buttons in polling places as directed by County Attorney Mike Freeman.**

63.     Hennepin County Attorney Mike Freeman also publicly stated that poll watchers wearing buttons asking for their I.D. (identification) "won't be allow[ed] in polling stations."  Mr. Freeman equated the Election Integrity Watch "Please I.D. Me." Buttons as campaign buttons stating, "You can't wear campaign buttons in a polling place, state law says you can't."

64.     Hennepin County Election Manager Rachel Smith has stated that she considers her office obligated to follow the dictates of the Hennepin County Attorney's pronouncement on the prohibition of "Please I.D. Me" buttons in Hennepin County election polling places on November 2, 2010.

**The Secretary of State as Minnesota's chief election officer and as the final arbiter of election law applicability in the polling place, will uphold decisions of County Election managers prohibiting "Please I.D. Me" buttons and Tea Party shirts.**

65.     Upon information and belief, the Secretary of State Mark Richie, as Minnesota's chief election officer responsible for the integrity and conduct of elections throughout the state, is the final arbiter of instructions and directions provided to election managers, or their equivalent officials, regarding the interpretation and application of elections laws within polling places.

66.     Upon information and belief, the Secretary of State endorses and will uphold the decision of county election managers to prohibit individuals from wearing "Please I.D. Me" buttons or "Tea Party" shirts as previously identified in this Complaint.

**Plaintiff Jeff Davis fears prosecution for expressing  his rights of freedom of speech and association for wearing a non-campaign button on election day.**

67.     Plaintiff Jeff Davis is an eligible voter residing in Ramsey County and is an advocate of the Election Integrity Watch effort.  He has a "Please I.D. Me" button, wears, and will wear that button into the polling place on November 2, 2010.

68.     Mr. Davis views the "Please I.D. Me" button as an expression of free speech that does not support any Minnesota political campaign ballot question or candidate.

69.     Mr. Davis further views the "Please I.D. Me" button as an expression of his association with the grass roots coalition of Election Integrity Watch.

70.     Mr. Davis is aware of the pronouncements of Defendant Joe Mansky prohibiting "Please I.D. Me" buttons from polling places.

71.     Mr. Davis is also aware that he can be prosecuted under Minn. Stat. § 211B.11 as it relates to Mr. Mansky's prohibition of the "Please I.D. Me" buttons.  As a result, Mr. Davis fears prosecution for his expression of freedom of speech and association for wearing the button "Please I.D. Me."

72.     Mr. Davis  is further concerned that if he does not relinquish the display of his "Please I.D. Me" button, he will be prevented from voting.

**Plaintiff Randy Liebo further fears prosecution for expressing her rights of freedom of speech and association for wearing a non-campaign shirt on election day.**

73.     Plaintiff Randy Liebo is an eligible voter residing in Hennepin County. He is an advocate of the Northstar Patriots effort.  He has a Tea Party Patriot shirt, wears it, and will wear that shirt into the polling place on November 2, 21010.

74.     Mr. Liebo views the "Tea Party Patriots" shirt as an expression of free speech that does not support any Minnesota political campaign ballot question or candidate.

75.     Mr. Liebo further views the "Tea Party Patriots" shirt as an expression of her association with the Minnesota Northstar Tea Party Patriots coalition to demand governmental integrity.

76.     Mr. Liebo is aware of the pronouncements of Defendant Joe Mansky prohibiting "Tea Party Patriots" shirts from polling places.  He is further concerned

that the pronouncement of Joe Mansky's directive of Minnesota's election laws will be enforced in the same manner in Hennepin County.

77. Mr. Liebo is also aware that he can be prosecuted under Minn. Stat. § 211B.11 as it relates to any enforced prohibition of the "Tea Party Patriots" shirts in or around polling places. As a result, he fears prosecution for his expression of speech and his association with the Northstar Patriots for wearing the "Tea Party Patriots" shirt.

78. Mr. Liebo is further concerned that if he does not relinquish the display of his "Tea Party Patriots" shirt, he will be prevented from voting.

**Plaintiffs Dan McGrath and Dorothy Fleming fear prosecution for expressing their rights of freedom of speech and association for wearing a non-campaign button on election day.**

79. Plaintiff Dan McGrath and Plaintiff Dorothy Fleming are eligible voters residing in Hennepin County and are advocates of the Election Integrity Watch effort. They have "Please I.D. Me" buttons, wear them, and will wear the buttons into the polling place on November 2, 2010.

80. They view the "Please I.D. Me" button as an expression of free speech that does not support any Minnesota political campaign ballot question or candidate.

81. They further view the "Please I.D. Me" button as an expression of their association with the grass roots coalition of Election Integrity Watch.

82.     They are aware of the pronouncements of Defendant Mike Freeman, Hennepin County Attorney, not to allow "Please I.D. Me" buttons in polling places — viewing them as campaign buttons.

83.     They are also aware that they can be prosecuted under Minn. Stat. § 211B.11 as it relates to Mr. Freeman's pronouncement that wearing of the "Please I.D. Me" button is a violation of state law.   As a result, they fear prosecution for their expression of speech and their association with Election Integrity Watch for wearing the button "Please I.D. Me."

84.     Mr. McGrath and Ms. Fleming are concerned that if they do not relinquish the display of their respect "Please I.D. Me" buttons, they will be prevented from voting.

## COUNT I

### Violation of the First Amendment of the United States Constitution and Threats to the Plaintiffs' Right to Vote

85.     The Plaintiffs adopts and incorporates by reference paragraphs 1 through 84 as if fully stated.

86.     The First Amendment of the United States Constitution guarantees individuals the right to free speech and association.

87.     The First Amendment of the United States Constitution guarantees individuals the right to vote.

88.     The Defendants either intentionally, recklessly, or with callous indifference to the federally protected rights of the Plaintiffs have threatened,

silenced, or chilled their rights to freedom of speech and association by the improper adoption of policies prohibiting the wearing of non-campaign "Please I.D. Me" buttons of the Election Integrity Watch, or shirts (or hats) expressing certain slogans, phrases, or statements as offered by the Minnesota Northstar Tea Party Patriots.

89.     Neither the "Please I.D. Me" buttons nor the "Tea Party Patriots" shirts attempt to persuade or influence voters to vote for or against any particular candidate, ballot question, or political party in the November 2, 2010 election.

90.     The Defendants' policies were established causing irreparable harm to the federally protected rights of the Plaintiffs' freedom of speech and association, to harass, threaten, silence, and chill these constitutional rights by directing election judges, poll workers, or others responsible for the conduct of elections and voters in polling places to prohibit the Plaintiffs' presence in or around polling places.

91.     The Defendants have further failed to properly educate, train, and instruct election judges, poll workers, or others responsible for the conduct of elections and voters in polling places in the proper enforcement of election laws, namely Minn. Stat. § 211B.11, in a manner to avoid the threatened intentional, reckless, or callous indifference to the Plaintiffs' federally protected rights of freedom of speech and association.

92.     Further, the enforcement of the Defendants' directives threatens to deprive the Plaintiffs of their right to vote without due process of law.

93.    An actual live controversy exists between the Plaintiffs and the Defendants in which the parties have genuine and opposing interests that are direct and substantial and of which a judicial determination will be final and conclusive.

94.    Plaintiffs request this Court to issue declaratory and injunctive relief under 42 U.S.C. §1983 to cease and prevent the Defendants' conduct of intentional, reckless, and oppressive disregard of Plaintiffs' First Amendment rights, and further award appropriate monetary damages against the Defendants, with the exception of the Secretary of State, inclusive of costs, attorney fees, and any other relief as this Court deems justified.

## COUNT II

**Violation of Article 1 § 3 of the Minnesota Constitution Protections of Freedom of Speech and Association and Threats to Plaintiffs' Right to Vote.**

95.    The Plaintiffs adopts and incorporates by reference paragraphs 1 through 94 as if fully stated.

96.    Article 1 § 3 of the Minnesota Constitution guarantees individuals the right to free speech and association.

97.    Article 1 § 3 of the Minnesota Constitution guarantees individuals the right to vote.

98.    The Defendants either intentionally, recklessly or with callous indifference to Minnesota's constitutionally  protected rights of the Plaintiffs have threatened, silenced, or chilled their rights to freedom of speech and association by the improper adoption of policies prohibiting the wearing of non-campaign "Please

I.D. Me" buttons of the Election Integrity Watch or shirts (or hats) expressing certain slogans, phrases, or statements offered by the Minnesota Northstar Tea Party Patriots.

99.    Neither the "Please I.D. Me" buttons nor the "Tea Party Patriots" shirts attempt to persuade or influence voters to vote for or against any particular candidate, ballot question or political part in the November 2, 2010 election.

100.    The Defendants' policies were established causing irreparable harm to Minnesota's constitutionally protected rights of the Plaintiffs freedom of speech and association, to harass, threaten, silence, and chill these constitutional rights by directing election judges, poll workers, or others responsible for the conduct of elections and voters in polling places to prohibit the Plaintiffs presence in or around polling places.

101.    The Defendants have further failed to properly educate, train, and instruct election judges, poll workers, or others responsible for the conduct of elections and voters in polling places in the proper enforcement of election laws, namely Minn. Stat. § 211B.11, in a manner to avoid the threatened intentional, reckless, or callous indifference to the Plaintiffs state constitutionally protected rights of freedom of speech and association.

102.    Further, the enforcement of the Defendants' directives threatens to deprive the Plaintiffs of their right to vote without due process of law.

103.   An actual live controversy exists between the Plaintiffs and the Defendants in which the parties have genuine and opposing interests that are direct and substantial and of which a judicial determination will be final and conclusive.

104.   Plaintiffs request this Court to declare under the Minnesota Constitution that the Defendants have violated constitutionally protected rights and enjoin them to cease and prevent them from conducting any intentional, reckless, and oppressive act resulting in the disregard of Plaintiffs' rights to freedom of speech and association, and award appropriate monetary damages, with the exception of the Secretary of State, against the Defendants inclusive of costs, attorney fees, and any other relief as this Court deems justified.

## Count III

### Facially, Minn. Stat. § 211B.11 is Constitutionally Invalid Under the United States and Minnesota Constitutions.

105.   The Plaintiffs adopts and incorporates by reference paragraphs 1 through 104 as if fully stated.

106.   Minnesota Statue 211B.11, subd. 1 states that

> A person may not display campaign material, post signs, ask, solicit, or in any manner try to induce or persuade a voter within a polling place ….on primary or election day to vote for or refrain from voting for a candidate or a ballot question … A political badge, political button, or other political insignia may not be worn at or about the polling place on primary or election day

> * * *
> Subd. 4. … Violation of this section is a petty misdemeanor.

107.    Plaintiffs Minnesota Majority, Minnesota Voters Alliance, and Minnesota Northstar Tea Party Patriots have formed a coalition identified as the Election Integrity Watch.

108.    Election Integrity Watch is not a political party and does not endorse candidates for elected office or promote or seek to defeat ballot questions.

109.    Election Integrity Watch creates and distributes "Please I.D. Me" button.

110.    The statement "Please I.D. Me" is not a "political" badge, a "political" button" or a "political" insignia.

111.    The "Please I.D. Me" button is not worn for a "political purpose" as defined under Minn. Stat. § 211B.01.

112.    Minnesota Statute § 211B.01 defines "political purpose" as an act that is intended or done to influence, directly or indirectly, voting at a primary or other election.

113.    The "Please I.D. Me" button is not campaign material as defined under Minn. Stat. § 211B.01.

114.    Minnesota Statute § 211B.01 defines "campaign materials" as an act means any literature, publication, or material that is disseminated for the purpose of influencing voting at a primary or other election.

115.    Meanwhile, the State of Minnesota makes and distributes "I voted" buttons to voters in the polling place and is allowed to do so under Minn. Stat. § 211B.11.

116.     Minnesota Statute 211B contains no definition of "political." Therefore, since Election Integrity Watch is not a political party and does not endorse candidates, support or seek to defeat ballot questions, the word "political" as seen in the context of the facts of this case is facially and as applied constitutionally invalid.

117.     Facially, Minnesota Statute 211B.11 is facially unconstitutional because it is not viewpoint neutral, is not narrowly tailored to meet a compelling state interest, is unconstitutionally overbroad and vague.  It impedes or threatens to impede the federally protected rights of freedom of speech and association the Plaintiffs seek to achieve and practice.

118.     Violation of Minn. Stat. § 211B.11 can result in criminal prosecution.

119.     Election managers, election judges, poll workers, and any other person responsible with the conduct of the election process in polling places are obligated to follow and enforce the directives of the statute, which has and will result, because of the way it is written, in the unconstitutional prohibition of certain individuals, such as members or supporters of Plaintiff organizations and coalition from wearing non-campaign buttons and clothing into polling places – perhaps even discouraging them from voting which is and would be a violation of their voting rights.

120.     An actual live controversy exists between the Plaintiffs and the Defendants in which the parties have genuine and opposing interests that are direct and substantial and of which a judicial determination will be final and conclusive.

121.    As a result, the Plaintiffs request this Court to declare Minn. Stat. §
211B.11 facially unconstitutional as violative of the First Amendment of the United
States Constitution and the Minnesota State Constitution.

## JURY DEMAND

122.    Plaintiffs demand a jury trial.

## REQUEST FOR RELIEF

1.    Plaintiffs have no adequate legal, administrative, or other remedy by
which to prevent or minimize the continuing and threatened irreparable harm from
the Defendants' present and threatened irreparable harm to their constitutional rights.

2.    An actual live controversy exists between the Plaintiffs and the
Defendants in which the parties have genuine and opposing interests that are direct
and substantial and of which a judicial determination will be final and conclusive.

3.    The Plaintiffs have a likelihood of success on the merits of their claims.

4.    The public interest and equities favor entry of a court order granting
the Plaintiffs the following described declaratory relief, as well as temporary,
preliminary, and permanent injunctive relief

**WHEREFORE,** the Plaintiffs prayerfully request that this Court:

A.    Declare that the Defendants are acting in violation of the First
Amendment of the United States Constitution;

B.    Declare that the Defendants are acting in violation of Article 1 § 3
of the Minnesota State Constitution;

23

C.      Declare Minn. Stat. § 211B.11 is facially unconstitutional under the United States Constitution and the Minnesota Constitution;

D.      Enjoin all of the Defendants from the enforcement of policies preventing any citizen from wearing the "Please I.D. Me" button or any "Tea Party Patriot" shirts (or hats) in polling places on November 2, 2010;

E.       Order all of the Defendants to immediately provide training and instruction to all election judges, poll workers, and all other individuals under the supervision and control of the Defendants responsible for the conduct of elections within the polling places that the wearing of "Please I.D. Me" buttons or any "Tea Party Patriots" shirt or hat does not infringe upon Minn. Stat. § 211B.11, and that the wearing of the button, shirt, or hat is protected speech and association of that person under the United States and Minnesota Constitutions;

F.      Award compensatory damages and punitive damages against Defendants with the exception of the Secretary of State if warranted;

G.      Award Plaintiffs their reasonable attorney fees, litigation expenses, and costs as allowed under 42 U.S.C. § 1988, and other applicable laws, and grant such other relief as this Court deems just to the Plaintiffs and their attorneys.

**MOHRMAN & KAARDAL, P.A.**

Dated: October 28, 2010      _s/Erick G. Kaardal_____
           Erick G. Kaardal, 229647
           33 South Sixth Street, Suite 4100
           Minneapolis, Minnesota 55402
           Telephone:  612-341-1074

           *Attorney for Plaintiffs*