UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Minnesota Majority, Minnesota Voters
Alliance, Minnesota Northstar Tea Party
Patriots, Election Integrity Watch, Susan
Jeffers, individually and as an Election
Judge, Dorothy Fleming, Jeff Davis, Dan
McGrath, Eugene F. Delaune II, and Randy
Liebo,

        Plaintiffs,

v.

Joe Mansky in his official capacity as the
Elections Manager for Ramsey County,
Rachel M. Smith in her official capacity as
the Elections Manager for Hennepin County,
Mike Freeman in his official capacity as
Hennepin County Attorney, Susan Gaertner
in her official capacity as Ramsey County
Attorney, and Mark Ritchie in his official
capacity as Secretary of State,

        Defendants.

Civil No. 10-4401 (JNE/SRN)
ORDER

This case concerns enforcement of the Minnesota Fair Campaign Practices Act in the 2010 election. A hearing was held beginning at 8:45 a.m. on today's date, November 1, 2010. Polls open at 7:00 a.m. on November 2, 2010. The Court issued its Order on the record and memorializes that Order here.

The case is before the Court on Plaintiffs' motion for a temporary restraining order (TRO) and preliminary injunction. The Court has treated this matter as a TRO. The institutional plaintiffs, Minnesota Majority, Minnesota Voters Alliance, Minnesota Northstar Tea Party Patriots, and Election Integrity Watch, describe themselves as a grass roots coalition. The individual Plaintiffs are registered voters in Minnesota, all but one of whom intend to wear either Northstar Tea Party tee-shirts or Election Integrity Watch buttons that state "Please I.D. Me" to

1

the polls. The buttons include an image of an open eye, a telephone number, and a website address including the word "integrity." The tee-shirts are emblazoned with several slogans including "Don't Tread on Me" and "Fiscal Responsibility, Limited Government, Free Markets." Individual Plaintiffs Dorothy Fleming, Jeff Davis, Dan McGrath, and Eugene F. Delaune II intend to wear "Please I.D. Me" buttons. Randy Liebo intends to wear a Tea Party tee-shirt. The Court received Court Exhibit 1, a button, and Court Exhibit 2, a "Don't Tread on Me" tee-shirt, at the hearing.

On October 28, 2010, Plaintiffs filed a Complaint against Joe Mansky and Rachel M. Smith, Election Managers for Ramsey County and Hennepin County, respectively; Hennepin County Attorney Mike Freeman; Ramsey County Attorney Susan Gaertner; and Secretary of State Mark Ritchie, all in their official capacities. The three-count Complaint alleges: (1) that Minnesota Statute section 211B.11, subdivision 1, is a facially unconstitutional restriction on First Amendment rights; (2) that section 211B.11 as applied to prohibit wearing the tee-shirts and buttons violates Plaintiffs' federal constitutional rights under the First Amendment; and (3) that section 211B.11 as applied to prohibit wearing the tee-shirts and buttons violates Plaintiffs' state constitutional rights to free speech and association. The statute provides:

> A person may not display campaign material, post signs, ask, solicit, or in any manner try to induce or persuade a voter within a polling place or within 100 feet of the building in which a polling place is situated, or anywhere on the public property on which a polling place is situated, on primary or election day to vote for or refrain from voting for a candidate or ballot question. A person may not provide political badges, political buttons, or other political insignia to be worn at or about the polling place on the day of a primary or election. A political badge, political button, or other political insignia may not be worn at or about the polling place on primary or election day.

Minn. Stat. § 211B.11, subd. 1 (2008).

Plaintiffs seek a temporary restraining order enjoining Defendants from preventing the individual Plaintiffs from entering the polling place and voting while wearing Tea Party apparel and the "Please I.D. Me" buttons.  Specifically, they ask the Court to direct the Defendants to communicate to all election officials, managers, and judges that exclusion of individuals wearing these buttons or tee-shirts is illegal.  By noon on Saturday, October 30, the Court received written responses from three of the five defendants:  Freeman and Smith (the Hennepin County Defendants), and Ritchie.  Defendants Mansky and Gaertner submitted responses at 8:15 a.m. on November 1.  Argument on the matter concluded at approximately 11:45 a.m. on November 1.

At the hearing, the County Defendants agreed that they intend to follow a process set out in the Affidavit of Mansky [Docket No. 28].  The Secretary of State also indicated that he will undertake to communicate that process statewide.  Essentially, the Mansky process is that no one will be prohibited from voting, but individuals who wear the buttons or apparel will be (1) asked to remove or cover the apparel and (2) the names of individuals refusing to do so will be noted for possible referral to the Minnesota Office of Administrative Hearings (OAH).

The Court notes that the timing of this motion does not weigh in favor of granting injunctive relief.  *See Bremer Bank, Nat'l Ass'n v. John Hancock Life Ins. Co.*, Civ. No. 06-1534, 2006 WL 1205604, at *2 (D. Minn. May 2, 2006) (citing *Lydo Enter., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984)).

A court considering a motion for a TRO must consider the following factors:

(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury in granting the injunction will inflict on the other party; (3) the probability of the movant succeeding on the merits; and (4) the public interest.

*Phelps-Roper v. Nixon*, 545 F.3d 685, 689-90 (8th Cir. 2008) (citing *Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

Plaintiffs seek to "enjoin . . . the implementation of a duly enacted statute" and so the Court "must make a threshold finding that a party is *likely* to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732-33 (8th Cir. 2008) (characterizing this higher standard as "appropriately deferential" to "reasonable democratic process"); *see also Phelps-Roper*, 545 F.3d at 690 ("In a First Amendment case . . . the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue."). Indeed, the three other factors to be considered by the Court in deciding whether or not a temporary retraining order should issue also trace back to the merits in the First Amendment context.

Defendants argue that the Court should abstain from entertaining Plaintiffs' claims based on *Younger v. Harris*, 401 U.S. 37 (1971), and *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). In light of the ongoing OAH proceeding which involves parties and issues intertwined with this case, Plaintiffs have not met their burden of demonstrating that the Court would likely find in their favor on the abstention issue.

The Court finds that, at this stage of the proceedings, the Secretary of State is likely a proper party because of his "sufficient connection with the enforcement of the Statute," *Am. Broad. Cos. v. Ritchie*, Civ. No. 08-5285, 2008 WL 4635377, *4 (D. Minn. Oct. 15, 2008).

Plaintiffs have also failed to meet their burden of showing that their constitutional attacks on section 211B.11, subdivision 1, would prevail if they made it past the abstention hurdle. The Court first considers Plaintiffs' facial attack on section 211B.11, subdivision 1. The first clause of section 211B.11, subdivision 1, is constitutional under *Burson v. Freeman*, 504 U.S. 191 (1992). It states that a person may not "display campaign material, post signs, ask, solicit, or in any manner try to induce or persuade a voter within a polling place or within 100 feet" of polling

locations.  The Tennessee law that was held constitutional in *Burson* prohibited "the display of campaign posters, signs or other campaign materials, distribution of campaign materials, and solicitation of votes for or against any person or political party or position on a question" within 100 feet of a polling place.  There is no meaningful distinction between the two, and the first clause of section 211B.11, subdivision 1, is therefore likely to pass constitutional muster.

The second part of section 211B.11, subdivision 1, restricts "political material" rather than "campaign" material and is geographically more limited because it applies only "at or about the polling place."  This part of section 211B.11 is unlikely to be analyzed under strict scrutiny because "at or about the polling place" is not a public forum for First Amendment purposes.  *See Marlin v. D.C. Bd. of Elections & Ethics*, 236 F.3d 716 (D.C. Cir. 2001).  Because the restriction is viewpoint neutral on its face and is reasonably related to the legitimate state interest of "maintain[ing] peace, order, and decorum," *Mills v. Alabama*, 384 U.S. 214, 218 (1966), at polling places, Plaintiffs have not shown that their facial attack is likely to succeed.

Plaintiffs' as-applied challenge rests on the prohibition of wearing Tea Party paraphernalia and the "Please I.D. Me" buttons at or about the polling place.  Plaintiffs argue that the prohibition is not viewpoint neutral because their organizations are being singled out by state authorities.  Such a finding would require evidence that they are being targeted in ways that others are not.  The record is, however, devoid of such evidence beyond mere speculation on this point.  Moreover, prohibiting the buttons and apparel is reasonably related to the state's legitimate interests.  The record suggests that the buttons are designed to affect the actual voting process at the polls by intimating that voters are required to show identification before voting.  This intimation could confuse voters and election officials and cause voters to refrain from voting because of increased delays or the misapprehension that identification is required.  The

buttons are also associated with a political movement to require voters to produce identification. The Tea Party apparel communicates support for the Tea Party movement which is associated with certain candidates and political views.  As such, prohibiting the buttons and apparel is reasonably related to the legitimate state interest of "maintain[ing] peace, order, and decorum" at the polls.  Plaintiffs have therefore failed to show that prohibiting the display of the buttons or apparel is likely to be found a First Amendment violation.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiffs' motion for a temporary restraining order [Docket No. 2] is DENIED.

Dated:  November 1, 2010

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge