UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Minnesota Majority, et al.,

    Plaintiffs,

v.                                                                        No. 10-cv-4401 (JNE/SER)
                                                                                                                                                              ORDER

Joe Mansky, in his official capacity as the
Elections Manager for Ramsey County, et al.,

    Defendants.

      This case is before the Court on a motion to dismiss or for summary judgment brought by Defendant Mark Ritchie, the Minnesota Secretary of State.  In response, the Plaintiffs have filed their own motion requesting that the Court deny or delay disposition of that motion under Federal Rule of Civil Procedure 56(d).

      For the reasons discussed below, Ritchie's motion is granted in part and denied in part, while the Plaintiffs' motion, except insofar as it is moot, is denied.

**Background**

      This action was filed in the days before the November 2, 2010 general election by several individual and institutional Plaintiffs against the Minnesota Secretary of State and Hennepin and Ramsey county election officials.  The goal of the suit was to prevent the Defendants from prohibiting voters from wearing Plaintiff Election Integrity Watch's "Please I.D. Me" buttons as well as hats and t-shirts bearing the insignia and slogans of Plaintiff North Star Tea Party Patriots to the polls.

1

At the center of the case, then, is Minn. Stat. § 211B.11, subd. 1. That provision of state law reads in relevant part as follows:

> A person may not display campaign material, post signs, ask, solicit, or in any manner try to induce or persuade a voter within a polling place or within 100 feet of the building in which a polling place is situated, or anywhere on the public property on which a polling place is situated, on primary or election day to vote for or refrain from voting for a candidate or ballot question. A person may not provide political badges, political buttons, or other political insignia to be worn at or about the polling place on the day of a primary or election. A political badge, political button, or other political insignia may not be worn at or about the polling place on primary or election day. This section applies to areas established by the county auditor or municipal clerk for absentee voting as provided in chapter 203B.

After filing their Complaint, the Plaintiffs quickly sought a temporary restraining order and preliminary injunction. The Court denied the motion on the eve of the general election.

Virtually immediately afterward, an individual in Secretary Ritchie's office sent an email to all of the county elections officers in the state. Attached to that email was a memorandum, which the parties refer to as the Election Day Policy. It reads as follows (emphasis in original):

> Please use the following process when dealing with an individual who is displaying political or campaign material in the polling place.
>
> 1. Minnesota law prohibits persons from wearing "political badges, political buttons, or other political insignia" or displaying campaign material within the polling place.
>
> 2. Election judges have the authority to decide what is "political." Examples include, but are not limited to:
>
>    - Any item including the name of a political party in Minnesota, such as the Republican, DFL, Independence, Green or Libertarian parties.
>    - Any item including the name of a candidate at any election.
>    - Any item in support of or opposition to a ballot question at any election.
>    - Issue oriented material designed to influence or impact voting (including specifically the "Please I.D. Me" buttons).
>    - Material promoting a group with recognizable political views (such as the Tea Party, MoveOn.org, and so on)
>
> 3. If a person is wearing political material, you should do the following:

- Explain that state election law prohibits displaying political materials in the polling place. (Minnesota Statutes 211B.11, subdivision 1.)
- Ask the individual to either cover up or remove the political material while in the polling place.
- If they refuse, explain that eligible voters will be allowed to vote, but any refusal will be recorded and referred to appropriate authorities.

4. **Even if a voter refuses to do so, you must permit any eligible voter to receive a ballot and vote.**

5. Record the name and address of a voter from the polling place roster in the incident log, along with a brief description of the item (button, hat, t-shirt, etc) that the voter refused to remove or cover up.

6. Election judges and official challengers are prohibited from displaying political or campaign material in the polling place. If they refuse to remove the political or campaign material, you can ask them to leave.

After the general election was held, the Plaintiffs filed an Amended Complaint asserting three claims under 42 U.S.C. § 1983: at Count I, for a violation of their First Amendment rights; at Count II, for a violation of their right to Due Process under the Fourteenth Amendment; and at Count III, for a violation of their right to Equal Protection under the Fourteenth Amendment. The Plaintiffs also assert in Count IV that Minn. Stat. § 211B.11, subd. 1 is unconstitutional under the First Amendment.

The Defendants subsequently moved to dismiss the Amended Complaint, with three motions filed, respectively, by Secretary Ritchie, the Hennepin County election officials, and the Ramsey County election officials. In April of 2011, the Court granted those motions, finding that the Plaintiffs' First Amendment challenges failed under both facial and as-applied analyses, while also rejecting their Due Process and Equal Protection claims.

The Plaintiffs appealed the dismissal of their First Amendment and Equal Protection claims. In a decision issued in March of 2013, the Eighth Circuit affirmed the dismissal of the Equal Protection claim and the First Amendment facial challenge, but reversed and remanded the

First Amendment as-applied challenge. *Minnesota Majority v. Mansky*, 708 F.3d 1051 (8th Cir. 2013).

Following that decision, the Plaintiffs filed a petition for a writ of certiorari with the Supreme Court, and the remand proceedings in the district court were stayed pending its outcome. The Plaintiffs' certiorari petition was denied in December of 2013, and after the parties stipulated to the lifting of the stay in July of 2014, Secretary Ritchie filed the instant motion.

## Discussion

There are two aspects to the motion that Ritchie has brought. First, Ritchie argues that he should be dismissed from the case on Eleventh Amendment immunity and standing grounds under Federal Rule of Civil Procedure 12. In the alternative, Ritchie argues that summary judgment is warranted because the Plaintiffs' as-applied First Amendment challenge fails on its merits under the Rule 56 standard.

The Court considers both of these arguments in turn.

### I.   Eleventh Amendment immunity and standing.

On the Rule 12 portion of his motion, Ritchie argues that he is not a proper defendant for two reasons: first, because the Amended Complaint does not contain sufficient factual content to establish that the Plaintiffs have standing to sue him; and second, because the Amended Complaint does not seek the only form of relief – prospective injunctive relief – that is available against a state official being sued in his official capacity under the Eleventh Amendment and the *Ex Parte Young* doctrine.

This is unpersuasive. Ritchie previously made the same Eleventh Amendment immunity argument on the motion to dismiss that he filed in December of 2010. In the decision that issued in April of 2011, the Court did not reach that issue in light of its determination that the case as a whole could not go forward because the Amended Complaint failed to state a claim upon which relief can be granted. This was consistent with Eighth Circuit precedent. *E.g., Friends of Lake View School District Incorporation No. 25 of Phillips County v. Beebe*, 578 F.3d 753, 763 n.14 (8th Cir. 2009) (noting that "we need not decide whether [the defendant] would be entitled to claim sovereign immunity under the Eleventh Amendment" where the complaint is dismissed for failure to state a claim under Rule 12(b)(6)).

When the Plaintiffs appealed the dismissal of the Amended Complaint, Ritchie pressed his immunity argument anew before the Eighth Circuit, while also raising his standing challenge for the first time. Brief and Addendum of Appellee Mark Ritchie at 22-35, *Minnesota Majority v. Mansky*, 708 F.3d 1051 (8th Cir. 2013) (No. 11-2125). In its decision, the Eighth Circuit did not address either of these arguments, but did "reverse and remand the [Plaintiffs'] as-applied First Amendment claim" – as to all Defendants – "so that [this Court] may '(1) properly analyze the motion as a request for summary judgment through application of the standards articulated in Rule 56 and (2) give the parties sufficient opportunity to create an acceptable record . . . .'" *Minnesota Majority*, 708 F.3d at 1059 (quoting *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 788 (8th Cir. 2007)).

The Eighth Circuit could not have ordered what it did – that the case proceed in the district court, without Ritchie's dismissal – if either of his arguments had merit. As Ritchie correctly notes, standing is a "threshold question" that bears on the federal courts' jurisdiction to hear a case. *281 Care Committee v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). As such,

Ritchie was free to raise standing for the first time on appeal. *See Constitution Party of S.D. v. Nelson*, 639 F.3d 417, 420 (8th Cir. 2011). When he did so, the Eighth Circuit was obliged to consider the issue "before all other questions." *Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co.*, 640 F.3d 821, 825 (8th Cir. 2011) (quoting *Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010)).

In addition, the Eleventh Amendment does not simply protect states and state officials from liability; where it applies, it grants them a constitutional "right not to be sued in federal court." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-46 (1993). Because "the value to the States of their Eleventh Amendment immunity . . . is for the most part lost as litigation proceeds past motion practice," a court may not allow a case to proceed against a defendant who has a valid Eleventh Amendment defense. *Id. See also Edelman v. Jordan*, 415 U.S. 651, 678 (1974) ("[I]t has been well settled . . . that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court[.]").

For these reasons, the rejection of Ritchie's standing and immunity arguments is the sine qua none of, and thus implicit in, the Eighth Circuit's disposition of the Plaintiffs' appeal and the remand it ordered. This Court is bound by that determination.

The Rule 12 portion of Ritchie's motion is therefore denied.

### II.     Summary judgment.

In the alternative to his Rule 12 arguments, Ritchie argues that the only claim that remains in this case – the Plaintiffs' as-applied First Amendment challenge to Minn. Stat. §

211B.11, subd. 1 and the Election Day Policy – fails under the Rule 56 summary judgment standard.

In reviewing the Court's 2011 dismissal of that claim on the Defendants' initial round of motions under Rule 12(b)(6), the Eighth Circuit explained that "[u]nder the First Amendment, the statute and Policy are constitutional as applied to [the Plaintiffs] if their application to [them] is viewpoint neutral and 'reasonable in light of the purpose which the forum at issue serves.'" *Minnesota Majority*, 708 F.3d at 1059 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 49 (1983)). On the first prong of that analysis, the Eighth Circuit affirmed that both the statute and the Policy are viewpoint neutral: the statute "applies to all political material, regardless of viewpoint [and] does not define 'political' to include or exclude any view," *id.* at 1057, while the Policy likewise "do[es] not exclude any party, material, or group from the Policy's application and do[es] not favor or disfavor any view," *id.* at 1059.

On the second prong, however, the Eighth Circuit found that the Court had relied on "matters outside the pleadings" – in contravention of Rule 12(b)(6) – for its conclusion that the Defendants reasonably applied the statute and Policy to the Plaintiffs. Therefore, the Eighth Circuit, as noted above, "revers[ed] and remand[ed] the as-applied First Amendment claim to the district court so that it may '(1) properly analyze the motion as a request for summary judgment through application of the standards articulated in Rule 56 and (2) give the parties sufficient opportunity to create an acceptable record . . . .'" *Id.* (quoting *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 788 (8th Cir. 2007)).

Accordingly, Ritchie has moved for summary judgment here. Under Rule 56, summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

movant must support his assertion that there is no genuine dispute either "by citing to particular parts of materials in the record" or by showing that the nonmovant "cannot produce admissible evidence to" create a genuine dispute. *Id.* (c)(1). This record evidence "and all fair inferences from it" are viewed "in the light most favorable to the non moving party." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006).

To be entitled to judgment as a matter of law, Ritchie must establish that excluding the Plaintiffs' buttons and apparel from the polls is "reasonable in light of the purpose which [that] forum . . . serves." *Minnesota Majority*, 708 F.3d at 1059 (citation omitted). The Eighth Circuit determined that "[t]he state has a legitimate interest in 'maintain[ing] peace, order, and decorum' in the polling place," as well as a "compelling interest in 'protecting voters from confusion and undue influence' and 'preserving the integrity of its election process.'" *Id.* at 1057 (citations omitted).

For summary judgment to be granted, then, Ritchie must use the factual record to show that the Defendants' application of the statute and the Policy to the Plaintiffs is reasonably related to these state interests. In other words, the question is whether Ritchie has borne his burden of identifying undisputed or indisputable facts in the record that would demonstrate that excluding the Plaintiffs' buttons and apparel from the polling place is rationally related to the state's interests in maintaining the decorum of the polls, preserving the integrity of elections, and protecting voters from confusion and undue influence.

### A. "Please I.D. Me" buttons.

With regard to the "Please I.D. Me" buttons, Ritchie has satisfied that burden. Ritchie points to a printout of a page from Election Integrity Watch's website detailing its "Action Plan" for the 2010 general election. That page contains the following instructions:

> When you go to vote on November 2, wear your Election Integrity Watch button and show your photo ID when you sign-in [sic] to vote. While Minnesota does not require an individual to show an ID, let's act like it does. This simple act of showing an ID will likely result in a spontaneous reaction from others in line behind you to show their ID as well. Any person in line thinking about committing voter impersonation will likely be dissuaded from doing so. (Although polls show that over 80% of Minnesotans support requiring a photo ID to vote, this measure has been repeatedly block [sic] by leaders in the Minnesota state legislature.)[1]

Furthermore, an additional printout from the website notes that Minnesota Voters Alliance – one of Election Integrity Watch's three constituent organizations (along with Minnesota Majority and the North Star Tea Party Patriots) and a co-Plaintiff with it here, Amended Complaint ¶ 10 – is "currently working to pass voter photo ID [requirements] in both state and city government."[2]

The Plaintiffs do not dispute this evidence in any way, whether as to its meaning, its authenticity or admissibility, or on any other ground. *See* Fed. R. Civ. P. 56(c)(1)(B) (requiring "a party asserting that a fact . . . is genuinely disputed" to "show[] that the materials cited do not

---

[1] The Plaintiffs themselves submitted a printout of this "Action Plan" along with other documents in support of their Motion for a Temporary Restraining Order and Preliminary Injunction at the very outset of this case. *See* Kaardal Declaration Ex. 5 at 13, ECF No. 8-6.
At oral argument, the Court requested that the Plaintiffs file a letter indicating whether those materials were provided to or otherwise brought to the attention of the Eighth Circuit on appeal. *See* Eighth Circuit R. 30A (governing the parties' preparation and submission of the designated record on appeal). The Plaintiffs submitted a letter that was nonresponsive to the Court's request.

[2] In the 2012 general election, Minnesota voters rejected a constitutional amendment that would have required photo identification for voting.

establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact").

The undisputed evidence before the Court, then, is both that Plaintiff Election Integrity Watch intended that their "Please I.D. Me" buttons be used as part of an orchestrated effort to falsely intimate to voters in line at the polls that photo identification is required in order to vote in Minnesota, and that Plaintiff Election Integrity Watch – whose name, website, and phone number are featured prominently on the buttons – is connected to a campaign that aims to change state and local laws such that voters would be required to present photo identification at the polls.  The Plaintiffs offer nothing in the way of evidence or argument to counter the obvious conclusion that flows from these facts: that precluding the Plaintiffs from wearing these buttons in the polling place – whether a voter identification measure is on the ballot or not – is rationally related to the state's interests in protecting voters from confusion and undue influence and in preserving the decorum of the polls and the integrity of elections.

The Plaintiffs do argue that the Eighth Circuit remanded the case with directions for the parties to "engage in the discovery process[,] including the requisite demands of Federal Rule of Civil Procedure 26."  According to the Plaintiffs, "[t]o short-circuit the [discovery] process" – such as by granting any aspect of Ritchie's motion here – "is to invite rebuke from the appellate court."

The Plaintiffs' position, however, is not true to the Eighth Circuit's decision.  In remanding the First Amendment as-applied claim, the Eighth Circuit cited Rule 12(d) and instructed the Court to "properly analyze *the motion*" – i.e., the Defendants' Rule 12(b)(6) motions – "as a request for summary judgment [and] give the parties sufficient opportunity to create an acceptable record."  *Minnesota Majority*, 708 at 1059 (emphasis added).  Neither Rule

12(d) nor the Eighth Circuit's decision contains any requirement that the Court defer disposition until full discovery has been had in accordance with Rule 26. Instead, Rule 12(d) requires only that the nonmovant be put on notice that the motion before the Court will be considered under the Rule 56 standards, such that the nonmovant has "a reasonable opportunity to present all the material that is pertinent to th[at] motion."

Because Ritchie filed this portion of his motion explicitly as a motion for summary judgment, there can be no doubt that the Plaintiffs have been given the requisite notice and have had ample opportunity to submit whatever material they deem relevant to the Court's decision. Despite that opportunity, the Plaintiffs offered nothing to rebut Ritchie's summary judgment argument with respect to the "Please I.D. Me" buttons.

That said, the Plaintiffs do argue – in fact, they filed a separate motion of their own to this effect – that the Court should deny or defer ruling on Ritchie's summary judgment motion on the ground that "discovery will provide rebuttal evidence to [his] claim that there are no genuine issues of fact." To obtain a continuance or other relief under Rule 56(d), the party opposing summary judgment must show that the motion is premature by "filing an affidavit affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (internal quotation and citations omitted).

The Plaintiffs' affidavit and arguments are inadequate to warrant Rule 56(d) relief. According to their affidavit, the Plaintiffs seek discovery on the following issues:

- "the number of times an election judge has entered the name of a person in a precinct log to be reported to appropriate authorities under the Secretary's election day policy (of November 2010) since November 2010 and whether the Secretary obtained reports or was kept abreast of those log entries";

11

- "whether the Secretary or any election judge failed to identify for possible civil or criminal prosecution organizations known to the Secretary to endorse candidates who wore or may have worn apparel or buttons supporting a particular political philosophy or position held by a candidate on the ballot or ballot question";

- "whether there were further oral or written communications between the Secretary and election managers or others regarding the spot enforcement of Minnesota Statute § 211B.11 of the Secretary's election day policy";

- "whether there were further oral or written communications between the Secretary and county attorneys regarding the spot enforcement of Minnesota Statute § 211B.11 of the Secretary's election day policy";

- "what information the Secretary of State received from County Auditors, Election Managers, or County Attorneys or other officials since November 2010 related to the enforcement of the directive disseminated to county auditors and election manages in November 2010";

- "how the Secretary determined that inert, passive wearing of apparel is disruptive or has the potential of being disruptive in a polling place";

- "what interests of the State the Secretary is protecting as it relates to inert, passive wearing of apparel as it applies to, for instance, 'Liberty' or 'Don't tread on me'";

- "the specific 'rational basis' of the Secretary of State to direct election judges to report perceived offenders of Minnesota Statute § 211B.11. The basis does not appear to be articulated in the Secretary of State's motion to dismiss or in the alternative for summary judgment";

- "how the Secretary perceives th[e] 'fact' [that the U.S. House of Representatives recognized a Tea Party caucus consisting entirely of Republican members in July 2010] and how it is applied to the election day policy it advocated and continues to advocate."

None of these matters have any relevance to the crux of Ritchie's motion with respect to the "Please I.D. Me" buttons. The material facts at issue are that Plaintiff Election Integrity Watch intended that its buttons be used in an effort to mislead voters about voter identification requirements at the polls, and that Election Integrity Watch and the buttons are tied to a campaign to change state and local elections laws with respect to those requirements. Because

the Plaintiffs do not contest those facts, and the discovery they seek is irrelevant to them, Ritchie has shown that prohibiting the Plaintiffs from wearing the buttons to the polls is rationally related to the state's legitimate interests in protecting voters from confusion and undue influence, ensuring order and decorum at the polls, and safeguarding the integrity of the voting process.

As to the portion of the as-applied First Amendment claim that relates to the "Please I.D. Me" buttons, then, Ritchie's motion for summary judgment is granted and the Plaintiffs' Rule 56(d) motion is denied.

### B.  North Star Tea Party Patriots' hats and t-shirts.

However, the portion of Ritchie's summary judgment motion that relates to the North Star Tea Party Patriots' apparel is a different matter.  As with the analysis of the "Please I.D. Me" buttons, the relevant question here is whether Ritchie has borne his burden of identifying undisputed or indisputable facts in the record that would demonstrate that prohibiting the Plaintiffs from wearing the North Star Tea Party Patriots' apparel to the polling place is rationally related to the state's interests in maintaining the decorum of the polls, preserving the integrity of elections, and/or protecting voters from confusion and undue influence.

He has not.  Ritchie only points to "[d]ocumentation pertaining to the Congressional Tea Party Caucus," with no explanation of its relevance or analysis of how it could demonstrate the absence of a genuine dispute of material fact.  Ritchie has thus failed to satisfy his burden of establishing his entitlement to summary judgment with respect to the portion of the First Amendment as-applied claim relating to the North Star Tea Party Patriots' apparel.  *See* Fed. R. Civ. P. 56(c)(1) (requiring the "party asserting that a fact cannot be . . . genuinely disputed [to] support the assertion"); *Foster v. Johns-Manville Sales Corp.*, 787 F.2d 390, 393 (8th Cir. 1986)

("Where the moving party fails to satisfy its burden to show initially the absence of a genuine issue concerning any material fact, summary judgment must be denied even if no opposing evidentiary matter is presented.").

This aspect of Ritchie's motion is therefore denied without prejudice. Because of that ruling, the aspect of the Plaintiffs' Rule 56(d) motion bearing on these issues is moot.

Based on the record, files, and proceedings herein, and for the reasons discussed above, IT IS ORDERED THAT:

1. Defendant Mark Ritchie's Motion to Dismiss or for Summary Judgment [ECF No. 110] is GRANTED IN PART and DENIED IN PART consistent with the memorandum above.

2. Plaintiffs' Motion for an Order under Fed. R. Civ. P. 56(d) [ECF No. 117] is DENIED IN PART and DENIED AS MOOT IN PART consistent with the memorandum above.

Dated: October 15, 2014

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge